## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |  |
|---|---|---|
| ACCELERATE360, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO: _____ |
| | ) | |
| BRYAN CROSBY, | ) | |
| | ) | |
| Defendant. | ) | |

## **COMPLAINT**

COMES NOW, Accelerate360, LLC ("Accelerate"), and files this Complaint against Bryan Crosby ("Crosby" or "Defendant"), respectfully showing as follows:

## **INTRODUCTION**

### 1.

Accelerate brings this action seeking recovery of over $19.56 million in losses arising from Crosby's gross misrepresentations and abject failures to perform. Accelerate retained Crosby for a singular purpose -- to source and procure authentic KN95 facemasks for Accelerate, which products were destined for re-sale to front-line essential workers and concerned consumers throughout the United States as the COVID-19 pandemic began to take hold earlier this year. Crosby, who touted his close, personal relationships with his reliable and established Chinese suppliers, instructed Accelerate how, and from whom, to effectively procure and export the

KN95 masks, connected Accelerate with his contacts, and then brokered, facilitated and managed the transactions through which Accelerate would, with Crosby's active encouragement, ultimately purchase over 20 million masks from Crosby's Chinese business associates – masks Accelerate paid for, in full, up-front, at Crosby's specific behest.

2.

Crosby and his company, Crosby Enterprises LLC, received a king's ransom in connection with Crosby's efforts in procuring the masks – namely $2,042,990 in commissions paid in just two short months.  Those commissions, however, were undeserved and procured by fraud.

3.

Unfortunately, Accelerate would soon discover that while it paid for authentic KN95 masks from two of Crosby's purported "trusted" suppliers, those suppliers would prove completely unable to deliver on Crosby's promises.  Indeed, one supplier was completely incapable of producing masks that met the KN95 standard while the other apparently abdicated the majority of its manufacturing obligations, subcontracting them to unqualified and unsupervised third-parties – a fact Crosby was fully aware of but misrepresented.

4.

As a result, Accelerate has had to enact a costly product recall and has seen its reputation as a supplier of quality PPE shredded.   Even after undertaking substantial mitigation efforts, Accelerate has been left with over 9.7 million virtually worthless masks – masks for which it paid $17.5 million – all as a result of Crosby's complete failure to fulfill his obligations in his haste to cash-in at Accelerate's expense.

## PARTIES, JURISDICTION AND VENUE

5.

Accelerate is a limited liability company formed and existing pursuant to the laws of the State of Delaware, with its principal place of business at 1955 Lake Park Drive, Suite 400, Smyrna, Georgia.

6.

Accelerate's sole member is a limited liability company formed and existing pursuant to the laws of the State of Delaware with a principal place of business in Georgia.   The sole member of that entity is a limited liability company formed and existing pursuant to the laws of the State of Delaware with a principal place of business in Georgia.   The sole member of that entity is a corporation formed and existing pursuant to the laws of the State of Delaware with a principal place of business in Florida.

7.

Accelerate is one of the nation's leading logistics, distribution and merchandising companies, with over fifty (50) distribution centers serving publishers, wholesalers and retailers around the nation.

8.

Defendant Crosby is an individual residing at 403 S. Gay Street, Apartment 13, Knoxville, Tennessee, where he may be served with an Original Summons and Complaint. Upon information and belief Crosby participates in numerous commercial endeavors, including serving as a "Strategic Advisor" for Magna 1 lubricants, a Partner in Fusion Business Solutions and the Chief Executive Officer of Southeastern Packaging Technologies, LLC. Through one or more of these various enterprises Crosby has, as further described below, developed relationships with various Chinese manufacturing firms, brokers and suppliers.

9.

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as the parties are of diverse citizenship and the amount in controversy exceeds $75,000.00.

10.

This Court has personal jurisdiction over Defendant in that: (i) Crosby entered into a business relationship with Accelerate in this judicial district and the unlawful

conduct was all directed to Accelerate in this judicial district; (ii) Crosby, upon information and belief, continuously and systematically conducts business in this judicial district; and (iii) Crosby directed his misrepresentations to, and has engaged and continue to engage in violations of Accelerate's rights in, this judicial district.

11.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391, in that: (i) Crosby entered into a business relationship with Accelerate in this judicial district; and (ii) a substantial part of the events and omissions that give rise to this action occurred in this judicial district.

## FACTUAL BACKGROUND

### *The Parties' Business Relationship*

12.

In March 2020, the United States was just beginning to experience its first COVID-19 cases and "temporary" lockdowns.  Accelerate, recognizing a shortage of N95 respirator masks was imminent, sought to actively acquire and import comparable KN95 masks from China to fill the void in the marketplace.

13.

Accelerate, however, had no relationships with Chinese mask manufacturers and limited experience navigating the complex web of issues necessary to source and export the masks out of China.  In short, Accelerate required a partner who knew

the Chinese market and could bring his relationships and knowledge to bear to ensure that Accelerate could quickly procure the requisite authentic KN95 product for resale.

14.

Enter Crosby, who touted himself as an "industry expert" well-versed in procuring and importing such products into the United States. Crosby promoted his close relationships with two manufacturers, Chengde Technology Co., Ltd. ("Chengde") and Bio-Max Tech Co., Ltd. ("Biomax"), both of which Crosby represented could readily supply authentic KN95 masks satisfying all applicable CDC and FDA standards.

15.

Crosby first introduced Accelerate to Chengde, which Crosby represented was one of the leading manufacturers of authentic KN95 masks and with whom Crosby had conducted business for years. Crosby sold Accelerate on his close, personal relationship with Chengde's principals.

16.

He touted Chengde's quality control standards and manufacturing processes and represented that Chengde was one of a handful of mask manufacturers authorized to purchase quality raw materials from the state-owned suppliers necessary to manufacture compliant KN95 masks.

17.

By way of example, in an email dated March 9, 2020, Crosby sent Accelerate pictures of the Chengde facility manufacturing masks and assured Accelerate he had personal knowledge of Chengde's manufacturing abilities. In the email, Crosby stated:

**From:** Bryan Crosby [mailto:bryan@spkgtech.com]
**Sent:** March-09-20 9:02 AM
**To:** Paul Benjamin
**Subject:** They have test report as well - I've been to this facility it's where we are making our pouches it's very well ran.
They make BILLIONS of bags for China Salt Co. they supply McCormick spices etc.

18.

Crosby further assured Accelerate that Chengde was well-equipped to directly handle the anticipated high-volume production of authentic KN95 masks Accelerate would require without sacrificing strict quality control measures over its production line.

19.

In a May 8, 2020 email to Accelerate Crosby further memorialized his representations regarding Chengde as follows:

Chengde Tech Co. LTD / Hangzhou Southpak Technologies Co. LTD is a leading food grade manufacturer of films used in the food and beverage industry, with large domestic and global customers. (McCormick Spices, Trader Joe's, GE Health, China Salt CO. LTD)

Chengde Tech Co. has industry leading engineering, R&D, sanitization practices, and multiple daily testing processes to ensure to all testing requirements meet and exceed industry requirements in the stringent food grade plastics industry.

Chengde Tech Co. began converting KN95 and 3 Ply disposable masks in February to help the Chinese government and civilians cope with the COVID-19 response, and because the equipment used for pouch conversion is able to be quickly adapted to the same style of manufacturing for respirator masks and surgical masks. As exporting opportunities opened up internationally, Chengde quickly ramped their production up from 500,000 per day to > 3,000,000 in less than six weeks, positioning it as one of the top manufactures in China by volume, and the top manufacturer of KN95 masks by filtration quality.

Chengde adheres to all CNAS, SGS, and relevant testing standards, is fully CE and FDA licensed and compliant, and with its world class engineering department, brings the best quality masks from China to the United States during this pandemic.

20.

Crosby next introduced Accelerate to Biomax, another manufacturer that Crosby purportedly knew well. Crosby represented to Accelerate that he'd visited and personally inspected Biomax's factory and could vouch for Biomax's ability to produce authentic KN95 masks meeting applicable U.S. standards with the same quality and precision as the trusted Chengde. In fact, Crosby represented that his relationship with the principal of Biomax was so close that he would personally visit, dine and stay with the principal during his frequent trips to China.

21.

By way of example, in an April 14, 2020 email – sent by Crosby four (4) days *before* the execution of the parties' written agreement, but after Accelerate had already paid Biomax a substantial down payment of $3.875 million at Crosby's

insistence – Crosby proclaimed that Biomax: (i) was already shipping over 539,000 KN95 masks to Accelerate; (ii) would be readily able to supply millions of KN95 masks to Accelerate per week; (iii) characterized that the relationship between Accelerate and Biomax would be "in close to zero hassle range"; and (iv) reassured Accelerate that it would receive "preferential treatment [from Biomax] as we do with Chengde moving forward". The email, which even included boastful video clips of purported KN95 masks rolling off Biomax's production lines set to music, provides, in pertinent part, as follows:

> Biomax got 321 cartons loaded yesterday (539,280). All the customs documents, clearance paperwork, and crucial export documents were provided and in place and this will not be of concern moving forward.
>
> Pilot Freight and the forwarder (GAL) are working well together and we should have little difficulty in to the foreseeable future logistics wise. We should be in close to zero hassle range here as well.
>
> I confirmed the following from BioMax last night:
>
> * the 4th and final high speed line (200-250K per day capacity each) was installed and in place at their second location as of last night. She now has four lines which at max capacity will provide 800K per day.
> * she has 10 additional lines with 30K per day.
> * total capacity for her is 1MM-1.3MM per day.
> * she's selling directly to Spain and Italy and they've been taking most of her capacity and raw material. After this week she will clear out their orders and we will become the emphasis. I think we can get to 700-800K per day, with Chengde contributing 300-450K.
> * she secured 5 tons worth of raw material and is buying this almost daily. Looking for 20 tons this week, that's about 12 million masks worth of material.
>
> I have her committed to getting 321 cartons out per day through the end of the week. This will cover the amount of down payment we've already made (3,875,000/1.22 = 3.176MM masks). If we see Biomax start to perform and we are bullish on demand next few months, we will need to make a decision at the end of the week about providing additional funds. She has been grateful and sincere throughout the difficulties and I believe we will get preferential treatment as we do with Chengde moving forward.

22.

Crosby knew it was "mission critical" that all masks ordered by Accelerate meet the KN95 standard as Accelerate was pursuing supplying masks to first-responders, healthcare workers and other frontline essential employees requiring protection during the COVID-19 pandemic. Equally important was that all product arrive in the United States properly packaged for resale and in compliance with all regulatory requirements. Crosby was also aware, at all times, that he had been retained, and was being paid substantial sums, to satisfy these objectives for Accelerate.

23.

As such, Crosby was, among other things, directly involved in package design and labeling to ensure the instructions and packaging satisfied regulatory requirements.  In fact, in an April 27, 2020 email addressing packaging design for the masks, Crosby assured Accelerate that the KN95 masks being procured from Chengde would be fit for re-sale for medical use irrespective of the way in which they were packaged, with Crosby stating as follows:

If we are delivering for medical use in the future - the bag is unnecessary, slows down packing time, and drives up package cost and freight cost.

Under the MSH import code we will be covered for whoever we sell to for medical use because the FDA and CDC guidelines say so .. not because we are marketing it any certain way.

24.

At all times Crosby promoted the ability of his well-known Chinese contacts to supply large quantities of authentic KN95 masks to Accelerate in accordance with the aforementioned criteria. In fact, Crosby continually encouraged and pressured Accelerate to purchase the KN95 masks in extraordinarily large quantities from his suppliers or else, Crosby warned, Accelerate would risk losing this source of supply altogether to more eager buyers.

25.

In direct reliance on Crosby's representations and assurances, and reasonably believing it had partnered with an industry expert in Crosby, over the course of just two months Accelerate agreed to purchase over 16.1 million KN95 masks from Chengde and over 5.038 million KN95 masks from Biomax for a total of over $33 million dollars.

26.

Accelerate was required to prepay for all of its masks because, according to Crosby's reassurances, demand was so high that prepayment was the only payment term for the entire industry.

27.

By way of example, in an April 22, 2020 email, Crosby advised Accelerate that Chengde would be able to produce "a minimum of 36 million [masks] for the

month of May … that's cruising", and that Biomax would be able to supply an additional 3 to 4 million authentic KN95 masks per week.  In that same email Crosby implored Accelerate:

> We need to keep feeding Chengde cash if the demand is still there. They've got a major German company that's looking to buy out the 30 million capacity with cash upfront. I told Monte that normally I'd disagree, but in this market I can believe it and we don't want to let these guys get away if we have interest.

28.

Just one week later, in an April 29, 2020 email, Crosby once again implored Accelerate to continue to prepay for the KN95 masks, advising as follows:

> We realize we've only received / have in transit 6.3MM up until now and I pushed back hard as we've paid for 9+ million, but they called our bluff.
>
> Chengde has made and pushed out over ten million masks. The above number subtracted from ten million is sitting in the freight forwarders possession waiting on flights. Chengde position is we owe them for that, even if it hasn't been delivered. We have had to make arrangements to get them cash this morning to keep these flights, plus future flights booked.
>
> As I told Troy last night, we are going to have to change our scorecard for cash payments to the suppliers to product moved from their warehouse in to possession of the freight forwarder. They have too much leverage right now with all the global demand to be able to tell us to go away if we aren't keeping them fed with cash. They made that clear last night. Hopefully the freight catches up, but for now we are going to have to finance the float in between the time it leaves the manufacturers factory, and when it gets to us.
>
> Chengde is behind on payments to the forwarder also, so we need to inject liquidity to alleviate the stress around this through the holiday. Seb knows what needs to be done and he and I will handle it.

29.

In fact, Crosby was in such a rush to ensure that Accelerate procured masks that, on April 26, 2020, he executed a Chinese customs declaration form on Accelerate's behalf and without Accelerate's prior consent, notifying Accelerate as follows:

12

i will go ahead and add my signature. We cannot wait any further we miss plane space we lose a week. both groups have been waiting all night.

per our conversation nothing in this document opens ANC up to any additional liability, and whether it's my signature or Dave's on there it won't make any difference to the chinese.

30.

Once alerted to this fact, Accelerate instructed Crosby not to sign for the company – and to ensure that he didn't, Accelerate was then forced to quickly sign the customs declaration form.  The attempted forgery was another attempt by Crosby to pressure Accelerate to continue importing the masks and thereby inflate and expedite the payment of his commissions.

31.

Crosby continued his sales push into early May.  In response to an email from Accelerate stating that it was unsure of customer demand moving forward and wanted to sell the masks it had already procured from Chengde before purchasing more, Crosby responded, in a May 6, 2020 email, that Accelerate would not be able to keep up with the demand, particularly from governmental front line workers and health care systems, and that maintaining the relationship with Chengde, by purchasing more product, would provide a "sustainable competitive advantage." Specifically, Crosby stated as follows:

Helena is working on pulling all testing data together. I told her moving forward in US, demand will be primarily driven by States, FEDS, and health care systems. We need to use their R&D, testing, and lab as a marketing weapon. She is on it, and I'll have my marketing team clean it up and make it US ready. We should have clear marketing that gets past all of the no's, or at least 90% of them on delivery of the message.

Between this level of quality and product being on the ground, we should have a sustainable competitive advantage.

Dave, been thinking about Albertson's proposals and that doesn't add up unless someone either screwed up and put it on a boat 6-8 weeks ago not knowing it'd that this long, or they bought speculative and now it's here and .25 cheaper for freight. We could be at a $2.05 type of number if on ocean.

Also, this same scenario is going to start to be the case for level I disposables, we could put a million a day on a boat and not keep up with the demand for restaurants, manufacturing plants, dental offices, etc.

## 32.

Accelerate would soon discover that Crosby's enthusiasm and encouragement was not focused on ensuring Accelerate would procure sufficient authentic KN95 masks to meet its needs.  Instead, Crosby was running an unlawful "pump and dump" scheme with Accelerate as his victim.  Crosby misrepresented the nature and abilities of his suppliers and overhyped their capability to supply authentic KN95 masks, all while inducing and encouraging Accelerate to purchase as many masks as possible to boost Crosby's commissions and further ingratiate Crosby with his Chinese business contacts.

### *The Formation of Crosby Enterprises LLC*

## 33.

On April 16, 2020, Crosby caused Crosby Enterprises LLC ("Crosby LLC") to be formed. Crosby LLC is a limited liability company formed and existing pursuant to the laws of the State of Tennessee with an address of 403 S. Gay Street,

Apartment 13, Knoxville, Tennessee – upon information and belief, this address is Crosby's residence.

34.

Crosby is the sole member and manager of Crosby LLC.

35.

No capital contributions were made to Crosby LLC.  Instead, Crosby LLC took on debt, in the form of a corporate credit card which, upon information and belief, was used to pay Crosby's personal expenses rather than legitimate business expenses of Crosby LLC.

36.

Crosby LLC is and at all times relevant hereto has been owned, dominated and controlled by Crosby and is a mere shell entity through which Crosby conducts his personal business affairs, including the transactions described in detail herein.

37.

Crosby LLC was formed solely for the purpose of contracting with Accelerate and, upon information and belief, only does business with Accelerate.

38.

Crosby LLC is one of multiple limited liability companies formed by Crosby and operating as a mere shell company out of his personal residence, carrying out Crosby's personal business endeavors under his exclusive dominion and control.

Another such entity is the newly formed Chengde International LLC, an entity related to the unlawful conduct described herein

### *The Parties' Contract*

#### 39.

At the same time Crosby was introducing Accelerate to Biomax and Chengde, counseling Accelerate on the business terms and arrangements for those transactions encouraging Accelerate to buy millions of masks from Chengde and Biomax, and personally invoicing Accelerate for commissions payments, Accelerate and Crosby began working to document their business relationship in a Sales Agency Agreement – a contract created as an afterthought given Crosby's work was already well under way.

#### 40.

The first draft of the Sales Agency Agreement was provided by Crosby to Accelerate's counsel in or around mid-March 2020. Crosby advised Accelerate that he had used the contract in the past. That Agreement, and subsequent drafts thereof, expressly contemplated Crosby was entering into the Sales Agency Agreement personally, in his individual capacity.

41.

Further, all drafts of the Sales Agency Agreement, including the execution copy, failed to accurately describe the services Crosby was to perform – apparently due to a mutual mistake and miscommunication.

42.

On April 16, 2020, Crosby's counsel advised Accelerate that Crosby had formed Crosby LLC and sent a revised draft of the Sales Agency Agreement to Accelerate with Crosby LLC as the contemplated counterparty.

43.

Thereafter, the Sales Agency Agreement was executed on April 20, 2020 by and between Accelerate and Crosby LLC.

44.

The Sales Agency Agreement, as prepared by Crosby and his counsel, contemplates Crosby LLC serving as United States sales representatives charged with selling KN95 and 3-ply disposable masks Accelerate had already independently procured to third-party retailers in the United States. (*See* Sales Agency Agreement, §1).

45.

The reality is the parties' business terms were quite different.  Indeed, at no point in time did Crosby or Crosby LLC ever sell, or attempt to sell, any of

Accelerate's KN95 masks to American retailers. Instead, at all times the parties clearly understood that Crosby and Crosby LLC's role was to procure authentic KN95 respirator masks for Accelerate and facilitate their export from China to the United States and ensure their arrival at Accelerate's (or its customers') distribution facilities.

46.

In exchange for his services Crosby was to receive commissions, payable when the KN95 masks arrived at Accelerate's United States' distribution center (or the distribution center of any customer the masks were shipped directly to).  For example, on March 10, 2020, Crosby sent an email to Accelerate providing details on masks, including costs, shipping details, and packaging. He then advised "I'd like to get 7.5% commission on invoiced amount if #S look good."

47.

Ultimately, the parties agreed Crosby would receive a 9% commission on the first 4,000,000 of KN95 masks delivered to Accelerate, and 7.5% thereafter.

48.

That commission structure was ultimately memorialized in the Sales Agency Agreement, that provides that Crosby LLC was to receive the following

Commission rate:

- $0.146 USD per unit for the first four million (4,000,000) units of KN95 respirator surgical masks, or equivalent, upon receipt at Accelerate's distribution center or the distribution center of Accelerate's customer in the United States.

- $0.122 USD per unit for all units in excess of four million (4,000,000) units of KN95 respirator surgical masks, or equivalent, upon receipt at Accelerate's distribution center or the distribution center of Accelerate's customer in the United States.

(*See* Sales Agency Agreement, Appendix A).

49.

In accordance with their agreements with Accelerate, Crosby and Crosby LLC invoiced Accelerate for commissions payments each time an order of masks was shipped to Accelerate, irrespective of whether those masks had already been sold to a third-party by Accelerate, Crosby, or Crosby LLC – the latter of which have never procured, or even attempted to procure, a sale.

50.

Evidencing Crosby, individually, entered into a business relationship and binding and enforceable agreement with Accelerate is the fact that Crosby, individually, invoiced Accelerate for commission payments, both before and after Crosby LLC was formed.   The invoices that were issued to Accelerate were sometimes issued by Crosby, personally, and sometimes issued by Crosby LLC as set forth in the chart below.

| Invoice Number | Invoicing Entity | Date | Commission Amount |
|---|---|---|---|
| Crosby-ACC01 | Bryan Crosby | March 29, 2020 | $49,128.77 |
| Crosby-ACC02 | Bryan Crosby | March 30, 2020 | $127,090.94 |
| Crosby-ACC03 | Crosby LLC | April 6, 2020 | $325,705.54 |
| Crosby-ACC04 | Crosby LLC | April 19, 2020 | $439,771.20 |
| CellC 005 | Bryan Crosby | April 26, 2020 | $489,027.78 |
| Crosby-ACC06 | Crosby LLC | April 27, 2020 | $788,486.40 |

51.

As set forth in the invoices issued by Crosby, Crosby claimed he was personally owed "9% of Accelerate Landed Cost Per Unit 0-4,000,000 Units" and "7.5% of Accelerate Landed Cost Per Unit > 4,000,000 Units". (*See* copies of the invoices annexed hereto as Exhibit A).

52.

In total, over a two-month period Crosby and Crosby LLC issued six commissions invoices, each time demanding immediate payment.

53.

Between March 30 and May 19, 2020, Accelerate dutifully and promptly accepted the invoices and paid the commissions believing Crosby and Crosby LLC were procuring, and had procured, authentic KN95 masks from their Chinese

business associates and, therefore, believing that Crosby and Crosby LLC had earned their commissions.

54.

All told, Crosby and Crosby LLC received a total of $2,042,990 in commissions payments for Crosby's "expert" services.  As it turns out, Crosby and Crosby LLC had no right to these substantial commissions as Crosby's blatant misrepresentations and gross non-performance have exposed Accelerate to over $19.56 million in damages.

### Accelerate Receives Counterfeit and Non-Compliant KN95 Masks.

55.

Once the Chengde and Biomax masks arrived in the United States Accelerate discovered it had been fleeced.

56.

Based on Crosby's representations, Accelerate understood that the authentic KN95 masks it was purchasing from Chengde would, in fact, be manufactured ***by Chengde*** at four separate plants.  Accelerate understood that three of these plants were staffed by third-parties operating under Chengde's license, however, Crosby was clear in his representations that all product derived therefrom would be: (i) authentic KN95 masks; (ii) Chengde licensed and branded product; (iii)

manufactured under Chengde's direction, control and with Chengde's oversight; and (iv) subject to Chengde's quality control processes and procedures.

57.

Notwithstanding Crosby's representations that Chengde could handle high-volume production and ensure quality control, Chengde and Crosby apparently subcontracted production of the remaining masks Chengde was to supply to Accelerate to unknown, unqualified third-parties and abdicated any quality control measures.  Hardly the "OEM" process that had been described to Accelerate.

58.

Accelerate did not discover this bait and switch until late May 2020, when it began unpacking the Chengde labeled cartons, shipped on Chengde's airway bill, and showing the masks to customers -- only to find masks bearing labels of multiple other suppliers in various packaging and product configurations within the Chengde labeled cartons.  Of course, that this discovery happened in front of, and was in fact made by a customer who translated the Chinese labeling on the interior packaging and recognized the product was "not Chengde", was extraordinarily embarrassing to Accelerate.  Needless to say, Accelerate lost that customer.

59.

When Crosby was confronted about the issue he attempted to minimize and justify the discrepancy all ***while still encouraging Accelerate to continue to***

**purchase new masks from Chengde** in new packaging to "solve" the problem.

Specifically, Crosby's May 28, 2020 email provides as follows:

THOUGHTS:

* as I discussed with Monte - the legal paper trail is easy to explain. 1. Chengde has all the shipping documen for product that got picked up from their plant, went to the airport, and product on the plane. That's reflected the AWBs for every single product we have….

* Accelerate is the consignee ….. product that leaves China on the AWB ….. gets received by us and only us with the FDA as the intermediary. We reconcile and confirm receipt on our end as well, inspect product, etc.

* If there are concerns about Chengde Plant 2 & Plant 3, there are legal documents easily translated, showing that Plant 2 and Plant 3 are satellite manufactures of Chengde product, using the same raw materials, conforming to the same tests, etc.

I know this last point is the most difficult one to talk around but I feel like we have to find someone that's willing to listen to this, trust it, and we **have** to close it to move forward and in to the new packaging with

Chengde listed as the single supplier point. Helena will submit all the test reports, videos, PO records for raw material, etc to support this…

Other wise, I suggest we take ONLY plant 1 product, put it up for offer and move it, and put the rest of plant 2 and plant 3 product on a boat by the weekend and send it to helena to repackage. She has agreed to do this.

### 60.

Crosby's claims that the discrepancies could be easily explained, and the product sold to willing third-parties, or the product simply returned to Chengde, was, unfortunately for Accelerate, woefully optimistic and grossly misleading.

### 61.

Accelerate had not, contrary to Crosby's false reassurances, received Chengde product from Chengde's "satellite manufacturers" "using the same raw materials and conforming to the same tests" etc…   The masks Crosby procured for Accelerate

were cheap "knock-offs" manufactured by entities that were not on the FDA's approved list of suppliers for KN95 masks.  As a result, none of the masks can be sold as KN95 – a prerequisite for sales to frontline "essential" healthcare workers.

62.

Worse still, tests of these counterfeit masks confirm that virtually all of them (over 7.6 million masks) do not even come close to meeting the KN95 standard of efficacy in any respect, rendering the masks virtually unmarketable.

63.

Incredibly, the very next day after trying to justify Accelerate's receipt of counterfeit product from Chengde, Crosby encouraged Accelerate to: (i) immediately wire an additional $4 million to Chengde to procure 4.1 million more masks; and (ii) consider purchasing as many as 10 million additional masks from Chengde.  To that end, Crosby's May 29, 2020 email provides as follows:

Helenas accounting matches up with sebs and they show about 700K short currently.

If we accept this, we'd need to wire the balance on the next shipments of 4.1 million.

So, we'd need to send them around 4 million USD before they'll ship it. (4.1 million - what's still owed)

CHENGde knows we are trying to time this to close the current inventory out before wiring another dime and I beat up on her really hard last night - but it's imperative that we know how much CHENGde plant 1 product we have on hands and could sell. If the customers are only wanting to touch this can we find a way to just move what we have and get money wired today?

We should be able to guarantee them 14.5 of only CHENGde product no matter what if they give us at least a week, but is an 8 or 10 million units of CHENGde 1 only an option to get cash flowing and rolling forward?

64.

Unfortunately, Crosby's malfeasance was not limited to the Chengde product. Equally devastating, the 4.597 million masks Accelerate received from Biomax to date are no better. These masks are of varying and inconsistent appearance, design and quality and came packaged not in uniform lots of twenty (20) masks per pack as ordered, but rather in haphazard assortments of five (5), ten (10) and twenty (20) masks.  Rather than being packaged for resale, many of the masks were simply placed in Ziploc bags in damaged cases with handwritten labels.

65.

When Accelerate sent samples of the Biomax masks for testing, it was discovered in June 2020 that those masks failed to even come close to meeting the standards applicable to KN95 masks.

66.

When the failed tests were reported to Crosby he, once again, resorted to trying to justify and minimize the issues – this time by blaming the conduct of a freight forwarder and hypothesizing that more testing would yield a better result.  At the same time Crosby, once again, encouraged Accelerate to solve the problem by just buying more masks.  In that regard, a June 11, 2020 email from Crosby provides, in pertinent part, as follows:

4. **Biomax** - talked to her for over 2 hours. She's personally invested about 40 million, has 2 dozen machines sitting there idle, and her workers and shareholders and the rest all over her ass. I don't think a lawsuit would be fruitful. She doesn't understand how the tests could have failed, she maintains she's got her records for testing, former reports from CNAS, SGS, VIC Labs, etc.  She's very upset with how the forwarder we hired handled things. They kicked it around China for about a month and she thinks there could have been negligence, improper storage, or even some funny biz there. I am not condoning or denying the possibility of these just passing along her thoughts.

How do we fix it..

She's got 1.2 billion already made and packaged in the good bags and cartons. She's willing to consider coughing that up as partial repayment.

*** 

If she gives us the 1.2 million free, let's say those are worth $1MM USD.

If we get an Albertsons or someone buy 10MM KN95's, we could have her agree to give us the first 2.5 million of that 10 million free for example if we did the 3 packs.

If the disposables are what the retailers want, that's fine that math is just bigger volumes and lower sell in,

She's got about 2 million a day capacity of each of these products..

2.5 million * $2..10 = $5.25 MM + $1MM of the free masks + whatever we can liquidate the stuff in the warehouse for and we are back to square + some.

She's just like Chengde if she thinks demand is dead and there's no more biz to be done she's gonna be hard to bring back.

There looks to be big spikes in the case counts. Let's be ready this time for the surge on both fronts.

I know the failed testing is troublesome, but we need to really understand if we market this as a scavenger / general use mask, what we actually need to be able to verify and support via testing. I know she can make 95+% I've seen the reports and don't know what happened and we can have a QC and QA team up her ass every single day and be in control of the freight ourselves. How can we resubmit positive testing to reinforce?

67.

That Crosby would even suggest Accelerate purchase 7.5 million ***more*** masks

from Biomax – a manufacturer sitting idle because it apparently could not deliver

legitimate product to anybody – after Biomax proved unable to supply the first 5.038

million masks speaks volumes about Crosby's objectives.   Crosby is clearly a

pandemic profiteer who exploited Accelerate's desire to supply authentic KN95

product to American first-responders, frontline workers and consumers for his own financial gain and to further ingratiate himself with his Chinese business associates.

68.

At least with respect to Chengde, the fraud Crosby perpetrated on Accelerate appears to have paid dividends for him.  On July 6, 2020, **after** the issues with Chengde's supply of product had come to light, Crosby caused to be formed Chengde International LLC, a limited liability company formed and existing pursuant to the laws of the State of Tennessee ("Chengde International").  Chengde International's registered address is Crosby's residence.

69.

That Crosby would form an entity and begin conducting business as an agent of Chengde within two short months of foisting over ten million dollars of counterfeit, defective Chengde product on Accelerate is just further evidence of Crosby's fraud.

70.

In short, Crosby and Crosby LLC failed to perform the very essence of their obligations – to source and procure authentic KN95 masks for Accelerate.

71.

Crosby, for his part, has refused to take accountability for his wrongdoing and simply cannot justify or explain how Crosby's trusted Chinese business associates

failed to deliver what Crosby promised they would, or why his only proposed solution required Accelerate to purchase tens of millions of additional masks from those suppliers.

72.

As a direct result of Crosby and Crosby LLC's failures, Accelerate received 12,260,986 in non-compliant, substandard, counterfeit masks – product for which it paid the suppliers $18,789,870, and product for which Crosby and Crosby LLC also received lucrative commissions of $2,042,990.

73.

In addition to those expenditures, Accelerate has been subjected to substantial additional losses.  Among other things Accelerate had to institute a costly and embarrassing product recall in connection with the non-compliant KN95 masks that were sold to a third-party supermarket retailer who distributed the product to approximately 500 retail locations throughout the Mid-Atlantic and Southeastern United States.

74.

Accelerate's reputation in the industry has been devastated as direct result of Crosby's unlawful conduct.  Accelerate is now viewed as a purveyor of low-quality, counterfeit PPE rather than a reliable source of authentic KN95 masks and other

protective equipment for frontline healthcare providers, essential workers and consumers.

75.

Accelerate's efforts to mitigate the massive losses Crosby and Crosby LLC inflicted only exacerbated the harm.  For its part, Biomax has refused to take any meaningful measures to replace its non-compliant product or refund any payments to Accelerate.  Instead, Accelerate was told the remainder of its outstanding order (approximately 500,000 masks) would, at long last, be filled with Biomax's "Second Generation" product.   The "Second Generation" masks, however, also failed miserably to meet the KN95 standard – in fact, they performed worse than the first shipments – reaffirming Crosby's and Crosby LLC's gross failings in sourcing product from Biomax.

76.

While, after months of negotiations and threatened legal action, Chengde is making a limited effort to replace some of the counterfeit, non-compliant masks it sold, it will only do so if Accelerate makes substantial additional payments to acquire the replacement product – thus far an additional $840,000, with Chengde demanding another $840,000 payment immediately, absent which it will cease supplying replacement product.  Chengde's response is a far cry from Crosby's claim that Chengde would simply accept a return of the defective counterfeit masks.

Nevertheless, Accelerate has no choice but to "mitigate" its devastating losses in this manner to recover what it can – and even with this mitigation Accelerate's losses, and Crosby's liability to Accelerate, exceeds $19.56 million.

77.

Adding insult to injury, to date Accelerate has been forced to expend an additional $125,000 to repackage some of the replacement masks being manufactured by Chengde for retail sale, as they are no longer saleable in the healthcare market due to the quality and provenance issues that Accelerate has encountered. Accelerate will incur substantial additional repackaging costs as: (i) additional masks are procured from Chengde as part of the mitigation; and (ii) Accelerate attempts to resell the defective masks it already received as cloth face coverings.

78.

Accelerate has, therefore, been left with over $18 million worth of masks sourced by Crosby and Crosby LLC that were not fit for their intended purpose and have virtually no resale value – so much so that Accelerate is struggling to even mitigate its damages by selling the masks as cloth face coverings for a small fraction of what it paid to acquire them.

79.

The foregoing makes quite clear that, at best, Crosby grossly misrepresented his experience in procuring authentic KN95 masks and the nature and extent of his relationships with his "trusted" Chinese manufacturers to induce Accelerate to enter into this doomed relationship.  At worst, Crosby schemed with his various Chinese business associates to fleece Accelerate and capitalize on the pandemic.  Either scenario represents a blatant case of fraud.

80.

As a result of this fraud, and Crosby's and Crosby LLC's other breaches, misdeeds and abject failure to perform, Accelerate has sustained damages in excess of $19.56 million.

81.

As a result of the foregoing, on September 15, 2020, Accelerate commenced a AAA arbitration against Crosby and Crosby LLC pursuant to the terms of the Sales Agency Agreement (the "Arbitration").

82.

On February 2, 2021 – almost four months after he appeared in the Arbitration – Crosby filed a Motion to Dismiss the Arbitration on the basis that only Crosby LLC was bound by the arbitration clause in the Sales Agency Agreement and, therefore, Crosby was not a proper party to the Arbitration proceedings.

83.

On February 26, 2021, Accelerate advised Crosby, his counsel, and the Arbitrator that it would voluntarily dismiss the claims against Crosby in the Arbitration and seek relief in this Court.

**COUNT ONE**
**BREACH OF CONTRACT AND BREACH OF IMPLIED**
**COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST CROSBY**

84.

Accelerate restates and incorporates the averments and allegations contained in the preceding paragraphs as if fully set forth herein.

85.

Crosby and Accelerate entered into a binding contract by which Crosby agreed to Crosby was to serve, and did serve, as Accelerate's procurement agent, charged with, among other things, sourcing face masks meeting the KN95 standard from reputable suppliers for purchase by Accelerate and ensuring their arrival in the United States.

86.

Crosby issued invoices to Accelerate for commissions allegedly owed to him in his personal capacity.

87.

As aforesaid, Crosby breached the valid, binding and enforceable terms of the parties' agreement in multiple respects including, most fundamentally, by procuring over 12 million counterfeit, substandard and non-compliant masks for Accelerate and invoicing and receiving commissions for such defective product.

88.

Such conduct also constitutes a breach of the implied covenant of good faith and fair dealing, as Crosby's conduct frustrates the very purpose of the contract, namely the Crosby's obligation to procure authentic KN95 masks for Accelerate, thereby depriving Accelerate of the very benefit of its bargain.

89.

As a direct and proximate result of Crosby's breach of the parties' agreement Accelerate has suffered, and will continue to suffer, substantial harm.

**COUNT TWO**
**BREACH OF CONTRACT AND BREACH OF IMPLIED**
**COVENANT OF GOOD FAITH AND FAIR DEALING**
**AGAINST CROSBY BASED UPON ALTER EGO**

90.

Accelerate restates and incorporates the averments and allegations contained in the preceding paragraphs as if fully set forth herein.

91.

Crosby LLC and Accelerate entered into a binding contract (i.e. the Sales Agency Agreement) by which Crosby LLC agreed to serve, and did serve, as Accelerate's procurement agent, charged with, among other things, sourcing face masks meeting the KN95 standard from reputable suppliers for purchase by Accelerate and ensuring their arrival in the United States.

92.

Crosby LLC issued invoices to Accelerate for commissions allegedly owed to it.

93.

As aforesaid, Crosby LLC breached the valid, binding and enforceable terms of the parties' agreement in multiple respects including, most fundamentally, by procuring over 12 million counterfeit, substandard and non-compliant masks for Accelerate and invoicing and receiving commissions for such defective product.

94.

Such conduct also constitutes a breach of the implied covenant of good faith and fair dealing, as Crosby LLC's conduct frustrates the very purpose of the contract, namely Crosby's obligation to procure authentic KN95 masks for Accelerate, thereby depriving Accelerate of the very benefit of its bargain.

95.

As a direct and proximate result of Crosby LLC's breach of the Sales Agency Agreement, Accelerate has suffered, and will continue to suffer, substantial harm.

96.

Crosby LLC is the alter ego of Crosby, and the obligations of Crosby LLC, as may be determined in the parties' arbitration, are also the obligations of Crosby.

97.

There is such a unity of interest and ownership between Crosby and Crosby LLC that the individuality of defendant Crosby LLC or Crosby LLC's separateness from Crosby has ceased as a result of the following facts.

98.

Crosby LLC is influenced and governed by Crosby.

99.

Crosby is the owner and holder of all of the membership interests of Crosby LLC.

100.

 Crosby is the sole manager of Crosby LLC and has sole control over Crosby LLC.

101.

Crosby LLC was at all material times herein a corporate instrumentality used for the benefit of Crosby.

102.

Crosby LLC operates out of the Crosby's personal residence.

103.

Crosby LLC is, and at all times herein was, undercapitalized for the reasonable needs of its business; in fact, Crosby LLC has admitted that it was never capitalized and received no capital contributions.

104.

The form, entity, and structure of Crosby LLC was at all times disregarded by Crosby.

105.

The assets of Crosby LLC were intermingled with the assets of Crosby, or transferred without consideration to Crosby in disregard of the purported separate corporate form, entity and structure of Crosby LLC.

106.

Crosby LLC was never intended to have and never has had any true separate existence. The sole purpose for the formation of Crosby LLC was, and is, to act as a device by which Crosby could evade his contractual obligations and liability to

Accelerate by causing an undercapitalized and insolvent limited liability company to enter into contracts through which Crosby could carry on his own business without personal liability.

107.

An adherence to the fiction of the separate existence as a limited liability company of Crosby LLC would sanction a fraud and promote an injustice in that: that the limited liability company was formed after Crosby already began performing procurement services for Accelerate and after Crosby had already invoiced for commissions in anticipation of personally entering into the Sales Agency Agreement; that Crosby is attempting to hide behind Crosby LLC and manipulate assets and liabilities to avoid responsibility; that all assets of Crosby LLC had been transferred to the Crosby, its sole member.

108.

As a result, Crosby LLC is merely an alter ego of Crosby.

109.

Thus, Crosby should be held liable for Accelerate's damages.

## COUNT THREE
## FRAUD

110.

Accelerate restates and incorporates the averments and allegations contained in the preceding paragraphs as if fully set forth herein.

111.

Between March and May of 2020 Crosby engaged in a fraudulent scheme whereby he: (i) grossly misrepresented his experience, competence and ability regarding the sourcing and procurement of KN95 face masks; (ii) blatantly mispresented the extent of his relationships with Chengde and Biomax; (iii) outright lied about the capabilities of Chengde and Biomax to supply KN95 masks; and (iv) intentionally concealed critical material facts, including that millions of the Chengde masks were not actually being manufactured by, or under the direction of, Chengde, but rather by subcontractors who would supply their own counterfeit product rather than authentic licensed and branded KN95 masks.

112.

When Accelerate discovered it had been sold defective and counterfeit masks and brought the issue to Crosby, Crosby, in furtherance of his fraudulent scheme, made additional misrepresentations regarding the cause for, and nature of, the defective product and once again attempted to induce Accelerate into purchasing tens of millions of additional masks from Chengde and Biomax.

113.

The foregoing fraudulent scheme was perpetrated by Crosby through numerous material omissions and misrepresentations, all of which the Crosby knew were false at the time they were made.

114.

Accelerate reasonably and in good faith relied on said omissions, representations, promises, and assurances, all of which were false and misleading, to its substantial detriment by, among other things, being induced to purchase, and continuing to purchase, tens of millions of dollars in masks from Crosby's Chinese business associates and continuing to pay Crosby's millions in commissions.

115.

Crosby's conduct, as aforesaid, was willful, wanton and in reckless disregard of Accelerate's rights and was otherwise unlawful.

116.

As a direct and proximate result of the Crosby's deceitful conduct, affirmative misrepresentations and material omissions, Accelerate has suffered, and will continue to suffer, substantial harm.

**COUNT FOUR**
**CONSTRUCTIVE FRAUD**

117.

Accelerate restates and incorporates the averments and allegations contained in the preceding paragraphs as if fully set forth herein.

118.

Crosby affirmatively misled Accelerate regarding, among other things, his experience, competence and ability regarding the sourcing and procurement of

authentic KN95 face masks, the nature and extent of his relationships with Chengde and Biomax, and the capabilities of Chengde and Biomax to supply KN95 masks.

119.

Crosby further omitted critical material facts, including that millions of the Chengde masks were not actually being manufactured by Chengde, but rather by subcontractors who were supplying their own counterfeit product.

120.

The foregoing misleading conduct could reasonably be expected to, and did, in fact, influence Accelerate into: (i) entering into the parties' business relationship under false and misleading circumstances; and (ii) purchasing masks from Crosby's Chinese business associates and contacts under false and misleading circumstances.

121.

Crosby's conduct, as aforesaid, was in violation of the legal and equitable duties owed to Accelerate.

122.

Crosby's conduct, as aforesaid, was in reckless disregard of Accelerate's rights and was otherwise wrongful.

123.

As a direct and proximate result of the Crosby's deceitful conduct, Accelerate has suffered, and will continue to suffer, substantial harm.

## COUNT FIVE
## NEGLIGENT MISREPRESENTATION

### 124.

Accelerate restates and incorporates the averments and allegations contained in the preceding paragraphs as if fully set forth herein.

### 125.

At all relevant times herein, Crosby: (i) misrepresented his experience, competence and ability regarding the sourcing and procurement of KN95 face masks; (ii) mispresented the extent of his relationships with Chengde and Biomax; (iii) misstated the capabilities of Chengde and Biomax to supply KN95 masks; and (iv) intentionally concealed critical material facts, including that millions of the Chengde masks were not actually being manufactured by, or under the direction of, Chengde, but rather by subcontractors who would supply their own counterfeit product rather than authentic licensed and branded KN95 masks.

### 126.

At the time the foregoing misrepresentations were made Crosby knew, or at least should have known, that his misstatements were false and misleading.

### 127.

The actions of Crosby were willful, wanton, malicious and in reckless disregard of Accelerate's rights.

128.

As a direct and proximate result of Crosby's negligent misrepresentations Accelerate has suffered, and will continue to suffer, substantial harm.

## COUNT SIX
## DECLARATORY JUDGMENT

129.

Accelerate restates and incorporates the averments and allegations contained in the preceding paragraphs as if fully set forth herein.

130.

An actual controversy has arisen and now exists between Accelerate and Crosby concerning whether Crosby LLC is a mere alter-ego or "corporate front" for Crosby such that the corporate form should be disregarded, and Crosby held liable for all sums due and owing hereunder.  That Crosby LLC: (i) was formed after Crosby already began performing procurement services for Accelerate and after Crosby had already invoiced for commissions in anticipation of entering into the Sales Agency Agreement; (ii) has its sole business address at Crosby's home; (iii) is, and always has been, undercapitalized; and (iv) is a sham entity formed exclusively for purposes of Crosby conducting his individual business endeavors and has been under Crosby's complete dominion and control confirms that adherence to the corporate form would only be in furtherance of a fraud.

131.

A judicial declaration is necessary and appropriate at this time under the circumstances to ascertain the parties' respective rights and obligations.

132.

By reason of the foregoing, Accelerate requests a judicial determination adjudging and declaring that Crosby is jointly and severally liable for any liability imposed upon Crosby LLC in the parties' arbitration proceedings.

**COUNT SEVEN**
**PROMISSORY ESTOPPEL**

133.

Accelerate restates and incorporates the averments and allegations contained in the preceding paragraphs as if fully set forth herein.

134.

As set forth above, Crosby induced Accelerate to purchase certain masks with promises that Chengde and Biomax would readily supply authentic KN95 masks satisfying all applicable CDC and FDA standards.

135.

Accelerate reasonably relied upon Crosby's promises that Chengde and Biomax would readily supply authentic KN95 masks satisfying all applicable CDC and FDA standards and agreed to purchase such masks.

136.

Based upon Crosby's promises that the masks that it was purchasing from Chengde and Biomax were authentic KN95 masks satisfying all applicable CDC and FDA standards, Accelerate paid Crosby commissions totaling $2,042,990.

137.

Crosby failed to procure authentic KN95 masks satisfying all applicable CDC and FDA standards.

138.

Accelerate has, therefore, been left with over $18 million worth of masks sourced by Crosby and Crosby LLC that were not fit for their intended purpose and have virtually no resale value – so much so that Accelerate is struggling to even mitigate its damages by selling the masks as cloth face coverings for a small fraction of what it paid to acquire them.

139.

As a direct and proximate result thereof, Accelerate has suffered, and will continue to suffer, substantial harm.

## COUNT EIGHT
## QUANTUM MERUIT/UNJUST ENRICHMENT

140.

Accelerate restates and incorporates the averments and allegations contained in the preceding paragraphs as if fully set forth herein.

141.

Through the aforementioned scheme, Crosby has unjustly benefitted through, among other things, his receipt of over $2,042,990 in commissions in connection with his procurement of KN95 face masks – notwithstanding the fact Accelerate did not receive the KN95 masks Crosby was to procure.

142.

Thus, Crosby unjustly reaped a substantial benefit, worth $2,042,990, at Accelerate's expense.

143.

Crosby knew that, in exchange for the commission payments, Accelerate expected to receive the benefits that Crosby deprived them of, namely the receipt of KN95 masks.

144.

As a result of the foregoing, principles of equity and good conscience mandate that Crosby pay Accelerate restitution of the fair and reasonable value of the benefits conferred and disgorge the $2,042,990.

**COUNT NINE**
**MONEY HAD AND RECEIVED**

145.

Accelerate restates and incorporates the averments and allegations contained in the preceding paragraphs as if fully set forth herein.

146.

Crosby received money belonging to Accelerate that in equity and good conscience he should not be permitted to keep.

147.

Crosby has failed to return any portion of the over $2,042,990 Accelerate provided despite his failure to procure authentic, merchantable KN95 Masks.

148.

As a result of the foregoing, Crosby is liable to Accelerate for such amount as is shown by the evidence at trial but believed to be not less than $2,042,990, plus interest.

## COUNT TEN
## BREACH OF IMPLIED WARRANTY

149.

Accelerate restates and incorporates the averments and allegations contained in the preceding paragraphs as if fully set forth herein.

150.

Implied the parties' agreement is a warranty of merchantability that the KN95 masks purchased by Accelerate shall be merchantable and comply with the standard course of dealing and usage of trade.

151.

Also implied in the parties' agreement as a matter of is a warranty of fitness for a particular purpose.

152.

As aforesaid, Crosby breached the implied warranties by procuring masks for Accelerate that were not merchantable insofar as they did not comply with applicable laws and requirements, including the CDC and FDA standards; did not conform to Accelerate's specification for KN95 masks; were not free from defects and were not fit for their intended purpose, namely resale by Accelerate to various third-party retailers and end-users throughout the United States.

153.

As a direct and proximate result of Crosby's breaches of the implied warranties, Accelerate has suffered, and will continue to suffer, substantial damages in an amount to be demonstrated at trial, but anticipated to be in excess of $19.56 million.

**COUNT ELEVEN**
**PUNITIVE DAMAGES**

154.

Accelerate restates and incorporates the averments and allegations contained in the preceding paragraphs as if fully set forth herein.

155.

Crosby's actions demonstrate intentional or willful misconduct and an entire want of care or indifference to consequences, so as to justify an award of punitive damages in connection with Accelerate's fraud claim.

### COUNT TWELVE
### ATTORNEYS' FEES

156.

Accelerate restates and incorporates the averments and allegations contained in the preceding paragraphs as if fully set forth herein.

157.

Accelerate should be awarded its attorneys' fees and expenses of litigation from Crosby, pursuant to OCGA § 13-6-11 because Crosby has been stubbornly litigious and has caused Accelerate unnecessary trouble and expense.

**WHEREFORE**, Accelerate respectfully prays:

a.    That it have trial by jury on all appropriate Counts of this Complaint;

b.    That it receives an award of compensatory damages, consequential damages, incidental damages, punitive damages, interest, attorneys' fees and costs and other damages to be determined at trial, but no less than $19.56 million as to Count One (Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing);

c.    That it receives an award of compensatory damages, consequential damages, incidental damages, punitive damages, interest, attorneys' fees and costs and other damages to be determined at trial, but no less than $19.56 million, or such other amount as is awarded in the parties'

arbitration, against Crosby as to Count Two (Breach of Contract Based Upon Alter Ego);

d.    That it receives, an award of compensatory damages, consequential damages, incidental damages, punitive damages, interest, attorneys' fees and costs and other damages to be determined at trial, but no less than $19.56 million, against Crosby as to Count Three (Fraud);

e.    That it receives, an award of compensatory damages, consequential damages, incidental damages, punitive damages, interest, attorneys' fees and costs and other damages to be determined at trial, but no less than $19.56 million, against Crosby as to Count Four (Constructive Fraud);

f.    That it receives an award of compensatory damages, consequential damages, incidental damages, punitive damages, interest, attorneys' fees and costs and other damages to be determined at trial, but no less than $19.56 million, against Crosby as to Count Five (Negligent Misrepresentation);

g.    That it receives entry of an Order declaring and adjudging that Crosby is liable for any award entered against his alter-ego, Crosby LLC, in the parties' Arbitration as to Count Six (Declaratory Judgment);

h.    That it receives an award of compensatory damages, consequential damages, incidental damages, punitive damages, interest, attorneys' fees and costs and other damages to be determined at trial, but no less than $19.56 million, against Crosby as to Count Seven (Promissory Estoppel);

i.    That it receives an award of restitution in an amount to be determined at trial, but no less than $2,042,990, against Crosby as to Count Eight (Quantum Meruit/Unjust Enrichment);

j.    That it receives an award of damages in an amount to be determined at trial, but no less than $2,042,990, against Crosby as to Count Nine (Money Had and Received);

k.    That it an award of compensatory damages for Crosby's breach of warranty in an amount to be demonstrated at trial, together with interest

and court costs thereon against Crosby as to Count Ten (Breach of Implied Warranty);

l.      That it receives an award of punitive damages in an amount determined by the enlightened consciousness of the jury together with applicable interest and court costs as to Count Eleven (Punitive Damages);

m.    That it receives an award of its attorneys' fees and expenses of litigation as a result of Crosby's stubborn litigiousness and creation of unnecessary trouble and expense together with applicable interest and court costs as to Count Twelve (Attorneys' Fees); and

n.     That it receives such other and further relief as is deemed necessary and just.

Respectfully submitted this 26th day of February, 2021.

BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC


_/s/ Steven R. Press_
Steven R. Press, Esq.
Georgia Bar No. 587199

Monarch Plaza, Suite 1500
3414 Peachtree Road, NE
Atlanta, Georgia 30326
Telephone: (404) 577-6000
Facsimile: (404) 221-6501


Cameron A. Welch, Esq. (_pro hac vice_ admission to be requested)
COLE SCHOTZ, P.C.
Court Plaza North
25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 678-6209

## **CERTIFICATE OF COMPLIANCE**

Undersigned counsel certifies that the foregoing document has been prepared

with one of the font and point selections (Times New Roman, 14 point) approved by

the Court in local rules 5.1 (c) and 7.1 (d).


                                             */s/ Steven R. Press*
                                             Steven R. Press, Esq.
                                             Georgia Bar No. 587199

Monarch Plaza, Suite 1500
3414 Peachtree Road, NE
Atlanta, Georgia 30326
Telephone: (404) 577-6000
Facsimile: (404) 221-6501